UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLIE BILL BEAMAN,

        Plaintiff,                                      Hon. Wendell A. Miles

v.                                                      Case No. 4:05-CV-005

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age at the time of the ALJ's decision. (Tr. 89). He possesses an eighth grade education and worked previously as a meat factory supervisor. (Tr. 89, 134-36).

Plaintiff applied for benefits on November 23, 2001, alleging that he had been disabled since September 28, 2000, due to pain in his shoulders, arms, hands, and legs. (Tr. 117-19, 146). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 105-16). On March 10, 2003, Plaintiff appeared before ALJ Manuel Carde, with testimony being offered by Plaintiff and medical expert, Dr. Arthur Lorber. (Tr. 467-512). In a written decision dated June 25, 2003, the ALJ determined that Plaintiff was not disabled. (Tr. 88-96). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-6). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On February 18, 1998, Plaintiff was examined by Dr. Michael Kelly. (Tr. 183-86). Plaintiff reported that he recently injured his left shoulder. (Tr. 185). Plaintiff exhibited normal range of shoulder motion, but the doctor observed "tissue tension abnormality with muscle spasm" of the rhomboideus muscle on the right. *Id.* An x-ray of Plaintiff's cervical spine was unremarkable,

but the results of a compression test were positive for left-sided radiculopathy at C5-7. (Tr. 183, 185). Plaintiff was instructed to participate in physical therapy. (Tr. 185).

On March 11, 1998, Plaintiff was examined by Dr. Kelly. (Tr. 194-95). Plaintiff reported that he was "doing quite well" and was not experiencing any neck or shoulder pain. (Tr. 194). Plaintiff exhibited normal range of motion and the results of a compression test were negative. *Id.* Dr. Kelly concluded that Plaintiff's radiculopathy pain had resolved, but instructed him continue with physical therapy for another two weeks. (Tr. 194-95).

On March 25, 1998, Plaintiff was discharged from physical therapy. (Tr. 203). Plaintiff reported that he was experiencing "only mild soreness in his shoulders." He was able to perform all strengthening exercises without difficulty. The therapist concluded that Plaintiff had met all his physical therapy goals. *Id.*

Treatment notes dated November 13, 1998, reveal that Plaintiff "reports no back pain since he changed his jobs." (Tr. 296). On November 18, 1998, Plaintiff reported that he "continues to feel good." (Tr. 295). Two days later Plaintiff reported that he felt "good" with no pain in his upper extremities. (Tr. 294).

On December 3, 1998, Plaintiff was examined by Dr. Bryan Visser. (Tr. 288). Plaintiff reported that he was not experiencing any pain or discomfort. The results of a physical examination were unremarkable and Plaintiff was cleared to return to work with restriction. *Id.*

X-rays of Plaintiff's cervical spine, taken on June 7, 2000, revealed that "the vertebral body heights and widths are normal as are the intervertebral disc spaces. Neural foramina appear intact. This study is within normal limits." (Tr. 382). X-rays of Plaintiff's shoulder, taken the same day, revealed "sclerosis at the greater tuberosities bilaterally indicating degenerative disease. Other

than this, the shoulders are unremarkable." X-rays of Plaintiff's wrists, also taken the same day, were "withing normal limits." *Id.*

On July 10, 2000, Plaintiff was examined by Dr. John Collins. (Tr. 362). Plaintiff reported that he "started physical therapy a couple of weeks ago and says it has helped tremendously with his shoulder and back pain." Specifically, Plaintiff reported that "does not have any pain " in his right shoulder. As for his left shoulder, Plaintiff rated his pain as 2 (on a scale of 1-10). With respect to his back pain, Plaintiff reported that "the low back pain is gone and when it does occur it is only a 2 on a scale of 1-10." The doctor diagnosed Plaintiff with bursitis of the shoulders. Plaintiff was instructed to continue working and continue participating in physical therapy. *Id.*

X-rays of Plaintiff's hips and pelvis, taken on July 25, 2000, revealed evidence of "mild" degenerative changes, but no evidence of fracture. (Tr. 381).

On July 27, 2000, Plaintiff participated in an esophagogastroduodenoscopy, the results of which revealed that he suffered from "nonerosive esophagitis." (Tr. 211). Following an August 17, 2000 examination, Plaintiff's doctor reported that Plaintiff experienced "good symptom control" of this condition with Prevacid. (Tr. 217).

On July 28, 2000, Plaintiff was examined by Dr. Collins. (Tr. 360). Plaintiff reported experiencing pain in his left lower extremity which he rated as a 2 (on a scale of 1-10). Plaintiff rated his left shoulder pain as 1 (on a scale of 1-10) and his right shoulder pain as 0 (on a scale of 1-10). Plaintiff rated his back pain as a 0 (on a scale of 1-10). The doctor reiterated that Plaintiff can continue to work. *Id.*

On October 2, 2000, Plaintiff was examined by Dr. John Koziarski. (Tr. 225-26). The results of a physical examination were unremarkable. *Id.* Plaintiff participated in an upper

gastrointestinal examination and a small bowel examination, the results of which were both normal. (Tr. 227). The doctor concluded that Plaintiff's gastrointestinal reflux disease (GERD) was controlled with medication. (Tr. 226).

On October 18, 2000, Plaintiff was examined by Dr. Collins. (Tr. 356). An examination of Plaintiff's shoulders revealed no tenderness to palpation. Plaintiff experienced "mild" tenderness when rotating his left shoulder, but no pain when rotating his right shoulder. Plaintiff reported that physical therapy "helped tremendously." He rated his shoulder pain as 1 (on a scale of 1-10). Plaintiff reported that his backs only hurts when carrying his 16 pound child. *Id.*

Plaintiff, "in his desire to be off his medications," opted to undergo "surgical correction of his reflux." (Tr. 232). This surgery was performed on November 1, 2000, by Dr. Koziarski. *Id.* On November 6, 2000, Plaintiff participated in an upper gastrointestinal examination, the results of which were normal. (Tr. 256). On December 14, 2000, Plaintiff participated in a barium esophagram, the results of which were normal with no evidence of gastroesophageal reflux. (Tr. 258).

On December 5, 2000, Plaintiff was examined by Dr. James Taborn, with the Midwest Arthritis Center. (Tr. 261-65). Plaintiff reported that he was experiencing "discomfort" in both his shoulders, as well as cramping and numbness in his hands. (Tr. 264). Plaintiff also reported experiencing arthralgias in his hips, lower back, hands, ankles, and feet. *Id.* An examination revealed no evidence that Plaintiff was suffering from arthritis or connective tissue disease. (Tr. 263).

On December 6, 2000, Plaintiff was examined by Dr. Collins. (Tr. 352). Plaintiff reported that he was doing "pretty well." An examination of Plaintiff's shoulders revealed

"minimal" tenderness to palpation. Plaintiff was able to raise his arms above his shoulders with "minimal" discomfort. Plaintiff rated his left shoulder pain as 3 (on a scale of 1-10) and his right shoulder pain as 1 (on a scale of 1-10). *Id.*

On January 3, 2001, Plaintiff was examined by Dr. Collins. (Tr. 350). Plaintiff was able to raise his arms above his shoulders with "minimal" discomfort. Straight leg raising was negative. Plaintiff rated his left shoulder pain as 3 (on a scale of 1-10), his right shoulder pain as 0 (on a scale of 1-10), his left leg pain as 4 (on a scale of 1-10), and his back pain as 0 (on a scale of 1-10). *Id.*

On February 13, 2001, Plaintiff participated in an MRI examination of his cervical spine, the results of which revealed "C3-4, C4-5 and C5-6 posterior osteophytes without significant exiting nerve root compression." (Tr. 260).

On March 27, 2001, Dr. Collins released Plaintiff to return to work, so long as he not push/pull/lift more than five pounds or perform repetitive bending activities. (Tr. 311-12).

On April 12, 2001, Plaintiff was examined by Dr. Dennis Jewett. (Tr. 302-03). Plaintiff reported that "he has periods of time without pain in his lower extremities, but the discomfort will reappear if he walks for three to four hours." (Tr. 302). Plaintiff reported that he experienced "constant" pain in his shoulders which was exacerbated "with activity such as lifting." *Id.* A neurological examination revealed no evidence of "distal distribution sensory loss" in Plaintiff's upper or lower extremities. (Tr. 303). The doctor observed no evidence of dysarthria or aphasia. Romberg testing was negative. Plaintiff exhibited a normal gait and there was no evidence of "abnormal drift in the upper extremities." *Id.* Plaintiff participated in an electromyography examination of his upper extremities, the results of which were "normal." (Tr. 304).

7

On April 23, 2001, Plaintiff was examined by Dr. Collins. (Tr. 346). The results of a physical examination were unremarkable. Plaintiff rated his left shoulder pain as 4 (on a scale of 1-10), his right shoulder pain as 3 (on a scale of 1-10), his left leg pain as 3 (on a scale of 1-10), and his back pain as 0 (on a scale of 1-10). *Id.*

On May 25, 2001, Plaintiff was examined by Dr. Collins. (Tr. 344). The results of a physical examination were unremarkable. Plaintiff rated his left shoulder pain as 3 (on a scale of 1-10), his right shoulder pain as 0 (on a scale of 1-10), his left leg pain as 4 (on a scale of 1-10), and his back pain as 0 (on a scale of 1-10). *Id.*

On June 2, 2001, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed "some generalized disc bulging at L4-5" which did not compromise the neural structures. (Tr. 250). The results of the examination were otherwise unremarkable. *Id.*

Plaintiff participated in a work conditioning program from May 30, 2001, through June 18, 2001. (Tr. 305-10). Upon completion of the program, the occupational therapist reported that Plaintiff can frequently lift (to shoulder height) 15-20 pounds, but can never lift any amount of weight above shoulder height. (Tr. 310). The therapist reported that Plaintiff can occasionally bend, reach, climb, squat, kneel, walk, crawl, and perform leg/arm movements. The therapist further reported that Plaintiff must alternate between sitting, standing, and walking during the workday. *Id.*

On July 31, 2001, Plaintiff was examined by Dr. Collins. (Tr. 338). The results of a physical examination were unremarkable. Plaintiff rated his left shoulder pain as 4 (on a scale of 1-10), his right shoulder pain as 3 (on a scale of 1-10), his left leg pain as 3 (on a scale of 1-10), and his back pain as 2 (on a scale of 1-10). *Id.*

On August 29, 2001, Plaintiff was examined by Dr. John Zeller. (Tr. 314). Plaintiff reported that he was experiencing pain in his left shoulder. The results of blood tests revealed no evidence that Plaintiff was suffering from a connective tissue disease. An MRI of Plaintiff's shoulder revealed that Plaintiff was experiencing an impingement syndrome. The doctor recommended that Plaintiff undergo conservative treatment consisting of medication and physical therapy. *Id.*

On September 12, 2001, Plaintiff participated in an MRI examination of left shoulder, the results of which revealed that Plaintiff suffered from impingement syndrome. (Tr. 252). The examination also revealed the presence of tendinopathy, but no evidence of a rotator cuff tear. *Id.*

On October 10, 2001, Plaintiff was examined by Dr. Collins. (Tr. 336). The results of a physical examination were unremarkable. Plaintiff rated his left shoulder pain as 3 (on a scale of 1-10), his right shoulder pain as 1 (on a scale of 1-10), his left leg pain as 3 (on a scale of 1-10), and his back pain as 0 (on a scale of 1-10). *Id.*

On October 30, 2001, Dr. Zeller concluded that Plaintiff could immediately return to work subject to the following limitations: (1) no lifting more than 35 pounds, (2) no pushing/pulling more than 75 pounds, (3) no overhead activities, and (4) no exposure to cold or damp work environments. (Tr. 313). Dr. Zeller expressly reported that Plaintiff "can work 8 hours/day." *Id.*

On November 12, 2001, Plaintiff was examined by Dr. Collins. (Tr. 334). The results of a physical examination were unremarkable. Plaintiff rated his left shoulder pain as 6 (on a scale of 1-10), his right shoulder pain as 4 (on a scale of 1-10), his left leg pain as 3 (on a scale of 1-10), and his back pain as 0 (on a scale of 1-10). *Id.*

On December 17, 2001, Plaintiff was examined by Dr. Collins. (Tr. 332). The results of a physical examination were unremarkable. Plaintiff rated his left shoulder pain as 4 (on a scale of 1-10), his right shoulder pain as 4 (on a scale of 1-10), his left leg pain as 3 (on a scale of 1-10), and his back pain as 0 (on a scale of 1-10). *Id.*

On January 20, 2002, one of Plaintiff's friend completed a report regarding Plaintiff's activities. (Tr. 167-72). Plaintiff's friend reported that on a typical day Plaintiff awoke, exercised, prepared something to eat, exercised again, watched television, went for a walk, bathed, and went to bed. (Tr. 167). Plaintiff's friend also reported that Plaintiff drives, shops, cleans house, reads, visits relatives, and cares for his personal needs. (Tr. 169-70).

On June 5, 2003, Plaintiff participated in an MRI examination of his lumbar spine, the results of which revealed a "left paracentral herniated disk at the L4-L5 level which appears to compromise the developing left L5 nerve root." (Tr. 411).

At the administrative hearing Plaintiff testified that his various impairments have deteriorated over time. Specifically, Plaintiff testified that his leg pain rated an 8 (on a scale of 1-10). (Tr. 475-76). He testified that the pain in his hands rated a 10 (on a scale of 1-10). (Tr. 476). Plaintiff testified that the pain in his shoulders rated a 10 (on a scale of 1-10). *Id.* Dr. Arhtur Lorber, a medical expert, testified that the medical evidence supported Plaintiff's subjective allegations regarding his upper extremities. (Tr. 505-06).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

### B. The ALJ's Decision

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) arthralgias, (2) bilateral shoulder bursitis, (3) degenerative joint disease of the shoulders, (4) impingement syndrome of the left shoulder with tendinopathy and a partial articular tear, (5) disorders of the lumbar spine, (6) cervical osteophytes with no nerve root compression, and (7) GERD. (Tr. 91). The ALJ concluded that these impairments, whether considered alone or in

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 95). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform "the full range of sedentary[2] work." (Tr. 93). Based on this

---

[2] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

RFC, the ALJ determined that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. The ALJ, relying on the medical vocational guidelines, determined that Plaintiff was not disabled.

The medical-vocational guidelines, also known as the "grids," consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. Rule 201.25 of the grids, which corresponds with Plaintiff's age, education, work experience, and RFC (as determined by the ALJ), directs a conclusion of "not disabled." Accordingly, the ALJ determined that Plaintiff was not disabled.

a. The ALJ's determination regarding Plaintiff's RFC is not supported by substantial evidence

A claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Shaw v. Apfel*, 220 F.3d 937, 939 (8th Cir. 2000) (same); *Lanclos v. Apfel*, 2000 WL at *3, n.3 (9th Cir., July 31, 2000) (same); *Moore v.*

*Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990) (to properly conclude that a claimant is capable of performing work requires "a determination that the claimant can *hold* whatever job he finds for a significant period of time").

As detailed above, Plaintiff suffers from severe impairments to his back and upper extremities. Plaintiff's long-time treating physician Dr. Collins concluded that Plaintiff was unable to lift more than five pounds or perform repetitive bending activities. (Tr. 311-12). Dr. Zeller, another of Plaintiff's treating physicians, concluded that Plaintiff was unable to perform any overhead activities. (Tr. 313). Dr. Zeller's conclusion that Plaintiff cannot perform any overhead activities was confirmed by the results of a work conditioning program in which Plaintiff participated. (Tr. 305-10).

While there is ample evidence to support the conclusion that Plaintiff can perform a *limited* range of sedentary work, there does not exist substantial evidence to support the ALJ's conclusion that Plaintiff can perform the *full* range of sedentary work. Specifically, the medical evidence reveals that due to his upper extremity impairments Plaintiff can perform only limited (if any) overhead activities. With respect to Plaintiff's inability to perform overhead activities, the Social Security regulations characterize such as a nonexertional limitation. *See* 20 C.F.R. § 404.1569a(c)(1). These regulations further provide that where a claimant suffers from nonexertional limitations, the medical-vocational guidelines "do not direct factual conclusions of disabled or not disabled." 20 C.F.R. § 404.1569a(c)(2). Accordingly, the ALJ improperly relied on the medical-vocational guidelines in denying Plaintiff's claim for benefits. While a vocational expert appeared at the administrative hearing, the ALJ declined to pose any hypothetical questions to her. In sum, there does not exist substantial evidence to support the ALJ's determination in this matter.

This conclusion is further supported by the medical evidence which Plaintiff first submitted to the Appeals Council and this Court. The Court realizes that it cannot consider this information when evaluating the ALJ's decision in this matter. See *Cline v. Commissioner of Social Security*, 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993). Nevertheless, this material confirms that while Plaintiff *may* be able to perform a limited range of sedentary work, he is incapable of performing the full range of sedentary work due to his back and upper extremity impairments.

b.   Evidence of Plaintiff's disability is not compelling

While the ALJ's decision is not supported by substantial evidence, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling).

While the ALJ's decision fails to comply with the relevant legal standard, neither is the evidence of Plaintiff's disability compelling. While Plaintiff is unable to perform overhead activities (and may experience additional limitations such as the need for a sit/stand option), his care providers have consistently reported that Plaintiff is capable of performing a *limited* range of work activities. Determining the true extent to which Plaintiff is capable of performing work activities is a factual matter. Furthermore, once an accurate RFC is developed for Plaintiff it must then be determined whether there exist a significant number of jobs which he can perform consistent with

15

his RFC. These are factual issues which this Court is not permitted to resolve. Instead, this matter must be remanded for the consideration of these (and any other relevant) issues.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date: December 15, 2005                /s/ Ellen S. Carmody
                                                                   ELLEN S. CARMODY
                                                                   United States Magistrate Judge